IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIM Y. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1213-N |
| | § | |
| XEROX CORP., | § | |
| | § | |
| Defendant. | § | |

### ORDER

This Order addresses Xerox Corporation's ("Xerox") renewed motion for judgment as a matter of law and alternative motion for new trial [126]. Xerox substantially misreads the state of the law in the Fifth Circuit regarding causation in mixed motive Title VII retaliation claims, and there is sufficient evidence to support the jury's findings of causation and malice or reckless indifference. The Court therefore denies the motion.

### I. BACKGROUND

Smith was a 20+ year employee of Xerox. Although Xerox had historically given Smith good reviews, Smith began receiving poor reviews following certain changes in management and job duties. Smith complained to the EEOC of age and gender discrimination. Shortly thereafter, Xerox fired Smith. Smith brought this action alleging age and gender discrimination and retaliation under Title VII. The case was tried to a jury for two weeks. Smith claimed she was terminated due to her age and gender, and in retaliation for her EEOC complaint; Xerox claimed she was terminated due to poor job performance.

There was conflicting evidence regarding Smith's performance and whether Xerox had followed its procedures in terminating Smith. The Court submitted the retaliation claim to the jury with a motivating factor standard of causation. The jury returned a verdict for Xerox on the discrimination claims and for Smith on the retaliation claim. The jury also found malice or reckless indifference and awarded actual and punitive damages. The Court entered judgment on the verdict awarding actual and punitive damages and attorneys' fees, but denying front pay. Xerox now renews its motion for judgment as a matter of law and moves for new trial, arguing that the motivating factor instruction was error, and that legally insufficient evidence supports the jury's findings of causation and punitive damages.

## II. MOTIVATING FACTOR CAUSATION APPLIES TO TITLE VII RETALIATION

The principal issue before the Court is whether the Court erred by submitting Smith's Title VII retaliation claim to the jury with a mixed motive instruction. The Fifth Circuit has already held that the mixed motive theory applies to Title VII retaliation claims. *See Block v. Kelly Servs., Inc.*, 197 Fed. Appx. 346, 348-49 (5th Cir. 2006) (unpub.). While it is tempting simply to cite to *Block* and move on to Xerox's next argument, the Court is mindful that the Circuit did not designate *Block* for publication and that it is not precedential. *See* 5th Cir. R. 47.5.4. The Court thus feels constrained to explain at greater length why *Block* is correct and Xerox is wrong.

### *A. Xerox's Argument*

Title VII embodies a variety of dualities: disparate treatment/disparate impact; discrimination/retaliation; direct/circumstantial; pretext/mixed motive. Xerox takes the

position that the disparate treatment-retaliation-circumstantial-mixed motive alternative does not exist. Xerox argues that the Civil Rights Act of 1991 (the "1991 Act") added section 2000e-2(m) to Title VII, "which prescribed the 'motivating factor' causation standard 'for race, color, religion, sex, or national origin,' *but not for retaliation claims*." Motion at 5 (emphasis in original) (quoting 42 U.S.C. § 2000e-2(m)). According to Xerox, because the Supreme Court based its decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), on the added subsection 2(m), which expressly does not apply to retaliation claims, *Desert Palace*'s mixed motive analysis also does not apply to retaliation claims. Thus, *Desert Palace* does not alter the "unbroken line of Fifth Circuit holdings," Motion at 4, requiring but for causation in retaliation claims. Therefore, Xerox argues, the Court erred in the jury charge by submitting motivating factor as the standard of causation.

The problem with Xerox's argument is that it misstates the context and purpose of the 1991 Act, the reasoning of *Desert Palace*, and the state of the law in the Fifth Circuit post-*Desert Palace*.

### *B. The Context and Purpose of the 1991 Act*

To understand the purpose and effect of the 1991 Act it is necessary to place it in context. Title VII of the Civil Rights Act of 1964 prohibits two distinct types of employment practices: (1) employment discrimination based on race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a); and (2) retaliation against an employee who has opposed discrimination or been involved in a discrimination claim, 42 U.S.C. § 2000e-3(a). In both sections the operative causal standard is "because." The Supreme Court first considered the

ORDER – PAGE 3

meaning of "because" in Title VII in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The Court was addressing a circuit split. The Third, Fourth, Fifth, and Seventh Circuits had held that "because" meant "but for" causation, while the First, Second, Sixth, and Eleventh Circuits had held that "because" meant substantial or motivating factor causation. *Id.* at 238 n.2 (plurality opinion). Based on the language of the statute and the legislative purpose of Title VII, the plurality sided with the motivating factor circuits. *Id.* at 239-42. Justice White, concurring in the judgment, noted the difference between pretext and mixed motive cases:

> The Court has made clear that "mixed-motives" cases, such as the present one, are different from pretext cases such as *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] and [*Texas Department of Community Affairs v.*] *Burdine*[, 450 U.S. 248 (1981)]. In pretext cases, "the issue is whether either illegal or legal motives, but not both, were the 'true' motives behind the decision." *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 400, n.5 (1983). In mixed-motives cases, however, there is no one "true" motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate. It can hardly be said that our decision in this case is a departure from cases that are "inapposite." *Ibid.*

*Id.* at 260; *see also id.* at 264-65 (O'Connor, J., concurring in the judgment). The Court went on to hold that in a mixed motive case, once motivating factor causation has been shown, the employer can, as a complete defense, show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the prohibited factor. *See id.* at 252-55 (plurality); *id.* at 266-69 (O'Connor, J.).

In part, the 1991 Act was a response to *Price Waterhouse* and other Supreme Court decisions that Congress perceived as too narrowly construing various provisions of the civil rights laws. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 3(4), 105 Stat. 1071, 1071 (1991) (purpose of 1991 Act includes "to respond to recent decisions of the Supreme Court

by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination"). In response to *Price Waterhouse*, the 1991 Act did two things: (1) it added 42 U.S.C. § 2000e-2(m), reversing that part of *Price Waterhouse* that allowed an employer to escape liability if it would have taken the same adverse employment action without regard for the prohibited factor, and (2) it amended 42 U.S.C. § 2000e-5(g), providing for limited remedies if the employer establishes it would have done the same thing anyway.

The language of subsection 2(m) is: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." The legislative history of the 1991 Act makes clear that Congress did not think it was creating mixed motive liability with subsection 2(m), but rather that it was repealing the *Price Waterhouse* "would have done it anyway" complete defense, and replacing it with a limitation on remedy.[1] In Part II of S. Rep. No. 101-315 (Summary of the legislation), the Report discusses *Price Waterhouse*:

> In *Price Waterhouse v. Hopkins*, 109 S. Ct. 1775 (1989), the Supreme Court ruled that an employment decision motivated in part by prejudice does not violate Title VII if the employer can show after the fact that the same decision

---

[1]Apparently no Senate Report accompanied the 1991 Act. However, a Senate Report does accompany the Civil Rights Act of 1990, a predecessor bill. *See* S. Rep. No. 101-315. In *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2183 & n.5 (2007), the Supreme Court looked to the 1990 Act's history for guidance in interpreting the 1991 Act, "which was in all material respects identical to the proposed 1990 Act." The language of subsection 2(m) is identical in both acts (though numbered 2(*l*) in the 1990 Act); the remedial language is somewhat different, but that is immaterial to the issues before the Court.

ORDER – PAGE 5

>would have been made for nondiscriminatory reasons. Section 5 of the Act responds to Hopkins by reaffirming that any reliance on prejudice in making employment decisions is illegal. At the same time, the Act makes clear that, in considering the appropriate relief for such discrimination, a court shall not order the hiring, retention or promotion of a person not qualified for the position.

S. Rep. No. 101-315, Part II.[2]  In the Report's Explanation of the Legislation, it described section 5 of the bill:

>Section 5 of the legislation amends Title VII to overrule one aspect of the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 109 S. Ct. 1775 (1989).  There, a plurality opinion for the Court concluded that "when a plaintiff . . . proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability . . . by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.* at 1975 (emphasis added).
>
>Section 5 of the legislation would add a new section 703(1) to provide that an unlawful employment practice is established when a complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for an employment practice, even though such practice was also motivated by other factors.

*Id.* at Part VI (following TAN 39).  Thus, the point of the 1991 Act (with respect to *Price Waterhouse*) was not to create mixed motive liability – *Price Waterhouse* and pre-1991 Act Title VII had already done that – but rather to repeal the *Price Waterhouse* "would have done it anyway" complete defense and replace it with a limited remedy.  It also follows that the omission of retaliation in subsection 2(m) does not preclude a Title VII mixed motive

---

[2]The copies of the report online are not paginated, so citation is to sections of the report or by reference to footnote location (text accompanying note, or TAN).

ORDER – PAGE 6

retaliation claim, but rather permits a "would have done it anyway" complete defense to such a claim.

### B. *Desert Palace* Relied on More than Subsection 2(m)

In Justice O'Connor's concurrence in *Price Waterhouse*, she made several references to "direct evidence" of discrimination. *See* 490 U.S. at 270-78. This caused several courts of appeals to require a plaintiff to show direct evidence of discrimination in mixed motive cases. In *Desert Palace*, the Supreme Court rejected that requirement. 539 U.S. at 98-99. Beyond cavil, the Court in *Desert Palace* "ma[d]e clear that the starting point for [its] analysis [was] the statutory text." *Id.* at 98. The Court indeed considered the language of subsection 2(m) in light of *Price Waterhouse*. *Id.* at 98-99. However, contrary to Xerox's position, the Court considered more than just the language of subsection 2(m).

First, the Court considered the fact that Congress has shown in other statutes that it knows how expressly to impose a heightened proof requirement when it wants to do so. *See id.* at 99 (citing 8 U.S.C. § 1158(a)(2)(B) and 42 U.S.C. § 5851(b)(3)(D)). Second, the Court observed that in the absence of any explicit "direct evidence" requirement in Title VII, the normal rule of civil litigation permitting proof by circumstantial evidence should apply. *See id.*[3] Third, the Court noted that circumstantial evidence is sufficient to support a finding of

---

[3]

In addition, Title VII's silence with respect to the type of evidence required in mixed-motive cases also suggests that we should not depart from the "[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases." [*Price Waterhouse*, 490 U.S. at 253.] That rule requires a plaintiff to prove his case "by a preponderance of the evidence," *ibid.*, using "direct or circumstantial evidence," *Postal Service Bd. of Governors v. Aikens*, 460 U.S.

(continued...)

ORDER – PAGE 7

guilt beyond a reasonable doubt in criminal cases. *See id.* at 100. Fourth, the Court noted that nowhere else in the law is a litigant "restricted . . . to the presentation of direct evidence absent some affirmative directive in a statute." *Id.* Finally, the Court noted that its holding was consonant with the balance of Title VII. *See id.* at 100-01. Thus, the Court concluded, "direct evidence of discrimination is not required in mixed-motive cases." *Id.* at 101-02.

Admittedly, subsection 2(m) by its terms does not address retaliation claims. *But every other reason given by the Supreme Court in* Desert Palace *for permitting proof of mixed motive by circumstantial evidence applies with equal force to retaliation claims.*

### C. Fifth Circuit Precedent Supports Title VII Mixed Motive Retaliation

***1. The Circuit Has Not Decided This Question.*** – Xerox claims that the Fifth Circuit has already determined that a Title VII retaliation claim requires proof of but for causation. Xerox primarily relies on *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005):

> The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct. This court has "consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated."

---

³(...continued)
711, 714, n.3 (1983).

*Desert Palace*, 539 U.S. at 99 (first three alterations in original).

ORDER – PAGE 8

*Id.* at 608 (footnotes omitted) (citing and quoting *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). Xerox conspicuously ignores other limiting language in *Septimus*:

> The parties agree that this case was litigated and tried as a "pretext" (rather than "mixed-motive") retaliation case.[7]
>
> _____
>
> [7]Accordingly, the court need not consider whether the Supreme Court's recent decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), or this court's decision in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir.2004) will affect this case.

*Id.* at 607 & n.7.[4] Thus, the very question the *Septimus* Court "need not consider" is precisely the question this Court must address, and *Septimus* does not control.[5]

Xerox also relies on *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007). But Xerox's reliance on *Strong* suffers from the same defect as its reliance on *Septimus*: "Because Strong's reliance claims are based on a pretext theory, our analysis is governed by the well-known *McDonnell Douglas* test and its burden-shifting framework." *Id.* at 805. *Strong*, like *Septimus*, does not address the causation standard appropriate for a Title VII mixed motive retaliation claim. The issue thus is undecided in the Fifth Circuit.[6]

---

[4]Xerox's failure to address head-on this limiting language is puzzling, as the Court cited it in its explanation for giving a mixed motive instruction during the charge conference.

[5]Indeed, the author of the *Septimus* opinion has recently held that mixed motive analysis in fact does apply to Title VII retaliation claims. *See Vrzalik v. Potter*, 2008 WL 2139529, at *8 (N.D. Tex. 2008) (Kinkeade, J.).

[6]Although the issue was resolved against Xerox in *Block v. Kelly Services, Inc.*, 197 Fed. Appx. 346 (5th Cir. 2006), that decision was unpublished and thus not precedential. As recently as earlier this month, the Fifth Circuit agreed the issue remains undecided. *See*
(continued...)

***2.* Rachid *and* Richardson v. Monitronics *Support the Motivating Factor Instruction Given Here.*** – Although the Fifth Circuit has not expressly addressed in a published opinion the causation or proof standard[7] to be used in Title VII mixed motive retaliation cases, two post-*Desert Palace* cases strongly suggest what the correct result is.[8] In *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004), the Court extended *Desert Palace* from Title VII discrimination claims to ADEA discrimination claims. The Court first noted that the ADEA uses the same "because of" language as Title VII. *See id.* at 310-11. It then noted that the ADEA, like Title VII, does not mention any heightened standard of proof. *See id.* at 311. It then applied the *Desert Palace* to the ADEA and held "that direct evidence of discrimination is not necessary to receive a mixed-motives analysis for an ADEA claim." *Id.* In footnote, the Court acknowledged that *Desert Palace* relied in part on the 1991 Act amendments to Title VII, which are not present in the ADEA, but found that did not alter its result. *See id.* at 311 n.8.

---

[6](...continued)
*McCullough v. Houston County*, 2008 WL 4613697, at *6 n.7 (5th Cir. Oct. 16, 2008) (unpub.); *see also Campbell v. England*, 234 Fed. Appx. 183, 186 n.4 (5th Cir. 2007) (unpub.) (same); *Staten v. New Palace Casino, L.L.C.*, 187 Fed. Appx. 350, 362 (5th Cir. 2006) (unpub.) (same).

[7]Bearing in mind that *Desert Palace* did not create mixed motive liability, but rather addressed whether it could be established by circumstantial evidence.

[8]*Accord Bruno v. Rih Acquisitions MS I, LLC*, 530 F. Supp. 2d 819, 822 n.3 (N.D. Miss. 2008) ("Fifth Circuit authority strongly suggests that the mixed-motive option is available in retaliation cases.").

Then, in *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327 (5th Cir. 2005), the Court extended *Rachid* to Family and Medical Leave Act[9] ("FMLA") retaliation claims. First, the Court observed that the anti-retaliation provision of the FMLA[10] included a causation requirement, even though it does not use the words "because of." *Id.* at 334. Next, the Court observed that the text of the FMLA "neither countenances nor prohibits the mixed-motive analysis." *Id.* Finally, the Court noted that regulation promulgated under the FMLA "anticipates" a mixed motive theory. *Id.* (citing 29 C.F.R. § 825.220(c)). Accordingly, the Court extended the circumstantial evidence mixed motive framework to retaliation claims under the FMLA. *Id.* at 334-35. Thus the Fifth Circuit has extended *Desert Palace* from

---

[9] 29 U.S.C. §§ 2601-53.

[10] 29 U.S.C. § 2615 provides:
    (a) Interference with rights
    (1) Exercise of rights
    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
    (2) Discrimination
    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
    (b) Interference with proceedings or inquiries
    It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual--
    (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
    (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
    (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

Title VII discrimination, to ADEA discrimination, to FMLA retaliation. It would be a curious thing indeed to hold it does not also reach Title VII retaliation.

Based on the reasoning of *Rachid* and *Richardson v. Monitronics*, the Court concludes that (1) a mixed motive theory can apply in Title VII retaliation claims, and (2) a Title VII retaliation mixed motive case does not require direct evidence, but can be raised by circumstantial evidence. *Rachid* and *Richardson v. Monitronics* demonstrate that a statute need not have subsection 2(m) language in order for *Desert Palace* to apply. As in *Desert Palace* and *Rachid*, the Title VII retaliation statutory language[11] specifies a "because" standard of causation.[12] The statute does not require a stricter standard of proof than in ordinary civil litigation. Finally, the goal of consistency among the various employment statutes, where possible, suggests the Court should apply *Desert Palace* to Title VII retaliation claims. *See Richardson v. Monitronics*, 434 F.3d at 334 ("[E]ven though [*Rachid*]

---

[11]42 U.S.C. § 2000e-3(a) provides:
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[12]So there is a stronger argument for applying *Desert Palace* to Title VII retaliation cases than to the FMLA in *Richardson v. Monitronics*, where the "because" language was missing. Indeed, from a plain language statutory construction point of view, the pertinent issue is not the omission of retaliation from subsection 2(m) but rather whether "because" in subsection 3(a) means something different than "because" in subsection 2(a).

ORDER – PAGE 12

addresses a different anti-discrimination statute, consistency requires that we endorse the mixed-motive framework in appropriate FMLA retaliation cases.").[13] Not to belabor the point, but the Fifth Circuit has so held,[14] albeit in an unpublished and therefore not precedential decision. *Block v. Kelly Services, Inc.*, 197 Fed. Appx. 346, 348-49 (5th Cir. 2006) (extending *Rachid* mixed motive analysis to Title VII retaliation claim).

This Court is not the first district court in the Circuit to reach that conclusion. In *Warren v. Terex Corp.*, 328 F. Supp. 2d 641 (N.D. Miss. 2004), after going through analysis very similar to that given here, the court reached the same result: circumstantial evidence is

---

[13]*Accord Sherry v. Tam Int'l, Inc.*, 2006 WL 1492248 (S.D. Tex. 2006) (footnote omitted):

> Claims of discrimination and retaliation brought under the FMLA are not significantly different from claims brought pursuant to Title VII of the Civil Rights Act of 1964 (" Title VII") or other anti-discrimination laws. *Haley* [*v. Alliance Compressor L.L.C.*], 391 F.3d [644,] 649 [(5th Cir. 2004)]; *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999). Therefore, in the absence of direct evidence, courts analyze FMLA retaliation claims, like Title VII claims, under the burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and recently modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir. 2004). *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

[14]As have the majority of other circuits this Court has found that address the issue. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224-26 (10th Cir. 2008) (allowing circumstantial evidence to establish retaliation as motivating factor); *Franklin v. State of Cal. Youth Auth.*, 172 Fed. Appx. 778, 780 (9th Cir. 2006) (unpub.) (same); *Culver v. Gorman & Co.*, 416 F.3d 540, 545-46 (7th Cir. 2005) (same); *Spiegla v. Hull*, 371 F.3d 928, 941-43 & n.10 (7th Cir. 2004) (applying motivating factor causation standard in First Amendment retaliation case, and noting the causation standard is the same in Title VII retaliation cases). *But see Carrington v. City of Des Moines*, 481 F.3d 1046, 1052-53 (8th Cir. 2007). Xerox also cites two pre-*Desert Palace* cases from other circuits for the contrary proposition, *see* Motion at 6-7, which this Court finds unpersuasive, particularly in view of *Rachid* and *Richardson v. Monitronics*.

sufficient to support a Title VII mixed motive retaliation claim. The argument is even stronger now, as *Warren* was decided before *Richardson v. Monitronics*. The Northern District of Texas has followed or cited *Warren* with approval in several decisions. *See Cornish v. Dallas Police Ass'n*, 2005 WL 3434390, at *6 n.7 (N.D. Tex. 2005); *Brisco v. Home State Ins. Group, Inc.*, 2005 WL 1164183, at *13 (N.D. Tex. 2005) (following *Warren* in Title VII retaliation claim); *Bergen v. Cont'l Cas. Co.*, 368 F. Supp. 2d 567, 573 n.2 (N.D. Tex. 2005) (following *Warren* in ADEA retaliation claim). The Court has also applied mixed motive analysis in Title VII retaliation claims independently of *Warren*. *See Lee v. Group 1 Software, Inc.*, 2008 WL 73223, at *2 (N.D. Tex. 2008) (court assumes arguendo mixed motive analysis applies to Title VII retaliation claim); *Vrzalik v. Potter*, 2008 WL 2139529, at *8 (N.D. Tex. 2008) (applying mixed motive analysis to Title VII retaliation claim); *Glover v. City of Dallas*, 2006 WL 1273823, at *2 (N.D. Tex. 2006) (same); *Bell v. Bank of Am.*, 2005 WL 1406053, at *8 (N.D. Tex. 2005), *report and recommendation adopted* 2005 WL 1586147 (N.D. Tex. 2005), *aff'd on other grounds*, 171 Fed. Appx. 442 (5th Cir. 2006) (unpub.) (same); *Brooks v. State Farm Mut. Auto. Ins. Co.*, 2004 U.S. Dist. LEXIS 23959, *18-21 (N.D. Tex. 2004) (same).[15]

---

[15]Xerox cites three district court decisions that it argues came to the opposite conclusion. In *Wesley v. Yellow Transp., Inc.*, 2008 WL 1931425 (N.D. Tex. 2008), the court mentioned "but for" causation with respect to a Title VII retaliation claim. *See id.* at *14. Although the court did not expressly address the issue in the context of retaliation, it did note that Wesley was asserting a pretext claim, not a mixed motive claim, with respect to his discrimination claims. *See id.* at *10. Neither *Wesley* nor the sources it cites for the proposition reject or even consider the mixed motive alternative. Similarly, *Turner v. St. Luke's Episcopal Health Sys.*, 2008 WL 706709 (S.D. Tex. 2008), provides no indication that
(continued...)

The Court, therefore, denies Xerox's motion with respect to the standard of causation in the jury charge.

### *D. Smith Was Not Required to Elect Between Pretext and Mixed Motive*

Xerox also makes a curious sort of election of theories argument, claiming that because Smith argued pretext, Smith could not also argue mixed motive. *See* Motion at 11-16. The Court is aware of no authority that requires a plaintiff to elect in pleadings or in the pretrial order whether she will proceed on either a pretext theory, or a mixed motive theory. *See* FED. R. CIV. P. 8(e)(2) (permitting pleading in the alternative); *Price Waterhouse*, 490 U.S. at 247 n.12 ("Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court; indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both.") (plurality).

> A plaintiff need not decide at the outset of the case whether she wishes to pursue a single motive or a mixed-motives theory of discrimination. To proceed to trial, the plaintiff need only raise a genuine dispute of fact as to whether sex was a motivating factor in the challenged decision. The question whether the evidence supports a single-motive or mixed-motives theory only arises *after* the parties have presented all of their evidence, and affects the trial

---

[15](...continued)
the plaintiff raised a mixed motive argument, and the court certainly did not reject a mixed motive argument. In support of but for causation, the *Turner* court cited *Septimus*, which as discussed above expressly reserved the applicability of mixed motive theories in Title VII retaliation cases. *See supra* p. 9. Finally, Xerox cites *Vialpando v. Johanns*, 2008 WL 410369 (D. Colo. 2008). While that court did expressly reject motivating factor causation, it did so in part based on a mistaken understanding of *Septimus*, apparently (like Xerox) unaware that *Septimus* expressly reserved judgment on motivating factor in a mixed motive case. *See id.* at *3. For the reasons stated in this Order, the Court must respectfully disagree with the holding in *Vialpando*.

>> court's jury instructions. As we explained in *Costa*, where the evidence supports a finding that discriminatory animus was
>>> one of two or more reasons for the challenged decision, at least one of which may be legitimate, the jury should be instructed to determine first whether the discriminatory reason was 'a motivating factor' in the challenged action. If the jury's answer to this question is in the affirmative, then the employer has violated Title VII.
>> 299 F.3d at 856-57.

*Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 n.7 (9th Cir. 2005) (quoting *Costa v. Desert Palace, Inc.*, 299 F.3d 838 (9th Cir. 2002), *aff'd* 539 U.S. 90 (2003)) (emphasis in original) (citation omitted).  Nor is there anything inconsistent with arguing to the jury that retaliation was the sole reason for an employment action or alternatively that retaliation was at least one of the reasons for an employment action.  As the *Vialpando* court observed in the discrimination context:

> In a practical sense, *Desert Palace* appears to swallow up the *McDonnell-Douglas* framework (at least as it relates to claims of disparate treatment discrimination, *see infra*). By eliminating the need for direct evidence, and holding that a plaintiff states a "mixed-motive" case simply by coming forward with circumstantial evidence of discriminatory intent, *Desert Palace* effectively renders *every* disparate treatment claim that survives summary judgment a "mixed-motive" claim. Put differently, if a plaintiff fails to come forward with at least *some* circumstantial evidence of discrimination, the employer will be entitled to summary judgment. Yet, once the plaintiff does so, he or she is now entitled to invoke the "mixed-motive" analysis and its corresponding "motivating factor" test.

*Vialpando*, *supra* n.15, at *5 (emphasis in original).  The Court therefore rejects Xerox's election argument.

ORDER – PAGE 16

## III. SUFFICIENT EVIDENCE SUPPORTS THE VERDICT

Xerox argues that no legally sufficient evidence supported the jury's findings of causation and malice or reckless indifference. The Court disagrees.

With regard to causation, Xerox argues that while temporal proximity may suffice to show causation in a prima facie case, it is not sufficient to show but for causation, citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d at 808 ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.").[16] Smith however, had more evidence than just temporal proximity. Strikingly, testimony from Xerox's Human Resources Manager, Joe Villa, essentially conceded retaliation. Additionally, there was also evidence that Xerox failed to follow its own established procedures in disciplining Smith. For example, Xerox placed Smith on a sixty day probationary period on October 28, 2005. Smith provided notice of her EEOC charge on November 17, 2005. Twelve days later, barely halfway through the probationary period, Smith's supervisor initiated paperwork to terminate her. This demonstrates not mere temporal proximity, but temporal proximity and violation of Xerox's own procedures.[17] Finally, Xerox repeatedly testified as to the purity of its motives; the jury apparently did not believe Xerox. Paraphrasing *Reeves*:

---

[16]The Court will assume that *Strong* applies to a mixed motive claim, and not just to the but for causation context.

[17]While Xerox has alternative theories about this document, the jury was certainly not required to accept Xerox's explanation.

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of [retaliation], and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a [retaliatory] purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147 (2000) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).  Accordingly, the Court finds the evidence legally sufficient to support the jury's findings of causation, and for the same reasons, malice or reckless indifference.[18]

## CONCLUSION

The Court therefore denies Xerox's renewed motion for judgment as a matter of law and alternative motion for new trial.

---

[18]Xerox also argues for the first time in its reply brief that the amount of punitive damages was excessive, citing *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008).  The Court will not consider an argument raised for the first time in a reply.  *See, e.g.*, *Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991).  Moreover, *Exxon Shipping* was a maritime common law case, inapplicable here.  More on point is *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), suggesting that awards with a single digit ratio of punitive to compensatory damages will satisfy due process.  The amount of compensatory damages awarded here was $67,500, and the amount of punitive damages awarded was $250,000, for a ratio of 3.7, well within the limits of *State Farm*.

Signed October 31, 2008.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 19